**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JENNIFER LEE BROWN; CHRISTOPHER W. BROWN, *on behalf of themselves and all individuals similarly situated* <br><br> Plaintiffs, <br><br> v. <br><br> RENTSPREE, INC., <br><br> Defendant. | Civil Action No. _____ |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Jennifer Lee Brown and Christopher W. Brown ("Plaintiffs"), *on behalf of themselves and all individuals similarly situated*, by counsel, and for their Class Action Complaint against Defendant RentSpree, Inc. ("Defendant" or "RentSpree"), they allege as follows:

**INTRODUCTION**

1. When enacting the Fair Credit Reporting Act, Congress found that consumer reporting agencies "have assumed a vital role" in and there was a need to ensure that they "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S. Code § 1681(a)(3)-(4). To accomplish Congress' goal, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the cornerstone provisions of the statute.

2. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This

section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993)).

3. This case arises because RentSpree, a consumer reporting agency, uses overly broad matching rules in the background checks its sells about prospective tenants. In this instance, RentSpree provided Ms. Brown's potential landlord with a grossly inaccurate report that falsely reported that Ms. Brown had 16 criminal convictions. RentSpree matched this criminal information to Ms. Brown even though the underlying court records for those charges unequivocally showed that they belonged to a person with a different date of birth. Despite the obvious and objective difference between Ms. Brown and the offender's date of birth, RentSpree appears to have attributed these criminal records to Ms. Brown because her name was *similar* to that of the offenders—a common occurrence.

4. RentSpree's inaccurate reporting could have been easily prevented if it required a first name, last name, and date of birth match—a common procedure adopted by consumer reporting agencies. *See* Nat'l Consumer Law Ctr., *Broken Records*, 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth."). Rather than adopting these procedures to ensure maximum accuracy, RentSpree is more concerned with

verifying tenants using an apparently automated process at "light-speed,"[1] thereby sacrificing quality in the name ofspeed. Any person or business who took a five-minute cursory review of the public records could confirm the material inaccuracies in the RentSpree report because all of the original court records contain a date of birth. By systematically allowing criminal records to be misattributed to potential tenants who had different dates of birth than the criminal offenders, RentSpree failed to maintain reasonable procedures to assure maximum possible accuracy.

5. In addition, RentSpree falsely reported criminal records regarding Mr. Brown that should not have been included in his report because the records were expunged. RentSpree's inaccurate reporting would have been easily avoided had it consulted the current public record prior to issuing Mr. Brown's report to his prospective landlord.

6. Because the putative class members were subject to the same procedure and suffered the same overarching harm, this case is capable and appropriate for class resolution. As a result of Defendant's conduct, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring a claim for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

---

[1] RentSpree, https://www.rentspree.com/ (last visited Sept. 23, 2020).

**PARTIES**

9. Plaintiffs are both a natural person and a "consumer" as defined and governed by the FCRA, 15 U.S.C. § 1681a(c).

10. RentSpree is a Delaware corporation doing business throughout the United States, including in Virginia. Among other things, Defendant sells consumer reports, often called background checks, to landlords for their use in deciding whether to rent to a prospective tenant.

11. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS**

12. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting. It regulates all consumer reports such as the tenant screening report prepared in Plaintiffs' names.

13. Background checks, including tenant screening reports, are "consumer reports," and providers of background checks like RentSpree are "consumer reporting agencies" governed by the FCRA. 15 U.S.C. § 1681a(d), (f).

14. The FCRA provides a number of protections for housing applicants who are subject to background checks.

15. The FCRA imposes duties on consumer reporting agencies to ensure that consumer

reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

16. Under 15 U.S.C. § 1681e(b), in provision enacted in 1970, consumer reporting agencies are always required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**FACTUAL ALLEGATIONS**

**A.     Pervasive Errors in Criminal Background Checks.**

17. The automated manner in which certain companies, such as Defendant, prepare criminal history reports increases the risk of inaccuracies. Companies often purchase criminal data in bulk and in static form, access databases that are infrequently updated or use suppliers or systems that gather superficial details on records through automated "webscraping."[2]

18. "Despite the importance of the accuracy of criminal background report, evidence indicates that professional background screening companies routinely make mistakes with grave consequences" for applicants. See Nat'l Consumer Law Ctr., Broken Records, available at http://www.nclc.org/images/pdf/pr-reprts/broken-records-report.pdf.

19. One "common problem with criminal background reports is false positive matches or mismatched identifications," resulting in a mismatched report that contains "the criminal history of a person other than the subject of the report." *Id*. at 15.

20. A mismatch report is "due in large part to unsophisticated matching criteria." *Id*.

21. Unlike "state-maintained databases" that use a "biometric identification system, such as fingerprint data," to match a person to a record, private companies typically use "non-

---

[2] Web scraping is a term for various methods used to collect information from across the Internet. Generally, this is done with software that simulates human Web surfing to collect specified bits of information from different websites. https://www.techopedia.com/definition/5212/web-scraping.

biometric information, such as name and date of birth." *Id*.

22. Because many courts will not release social security numbers, many private companies "rely solely on first name, last name, and date of birth," which "poses significant trouble for people with common names." *Id*.; *see also Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1360 (N.D. Ga. 2015) (denying a background company's motion for summary judgment, including its argument that "[r]eporting records that match complete names and dates of birth is a procedure reasonably designed to assure maximum possible accuracy, and is considered industry best-practice").

23. The problem is significantly magnified where, as here, a company does not require a full match of the first name, last name, and date of birth (rather than year of birth).

24. A search of a website, howmanyofme.com, demonstrates the high risk of inaccuracy created when a consumer reporting agency fails to use a full match of the first name, last name, and date of birth.

25. According to this predictive website—which uses U.S. Census Bureau data to make estimates about the number of people with the same name—there are at least 1.7 million "Browns" in the United States, and roughly *at least* 7,926 people with the exact name Jennifer Brown.

26. Given the number of people with common names, it is unreasonable to match a record to a person based, upon information and belief, the person's name and year of birth.

**B.  Facts Regarding the Plaintiffs' Class Claims.**

27. In early 2020, Plaintiffs applied to rent a larger single-family home for their family of five children in Loudon County, Virginia.

28. The property manager for the desired housing obtained a copy of Plaintiffs' credit reports and background checks as a part of its consideration of their rental application.

29. On or about February 22, 2020, RentSpree furnished a background report (hereafter "Report") regarding Plaintiffs as part of this background check.

30. The Report is a consumer report regulated by the FCRA.

31. The Report falsely attributed no less than 16 criminal cases in California to Ms. Brown, including multiple convictions for petty theft, shoplifting, and taking a vehicle without the owner's consent.

32. These criminal charges and guilty dispositions should not have been included in Ms. Brown's Report because they belonged to others with the same or similar name to Plaintiff.

33. Indeed, Ms. Brown has never lived in California or been charged of any of the criminal offenses included in the Report.

34. These records were publicly accessible. Any person who took a five-minute cursory review of the public records could confirm the flaw in the Report because all of the original public records do contain a date of birth. Specifically, the original public records contain a date of birth which has a different month, day and year from Ms. Brown's date of birth.

35. It is indisputable that prior to supplying the report about Ms. Brown to her prospective landlord, RentSpree failed to consult current public records, which indicate that the aforementioned criminal charges and guilty dispositions do not belong to Ms. Brown because identifying information included in the public record, such as date of birth, did not match that of Ms. Brown. Had RentSpree actually consulted or obtained the underlying court records, it would have seen an obvious discrepancy between Ms. Brown and the persons with the same name that have criminal convictions.

36. In addition to the false information regarding Ms. Brown, the Report also included false information about a criminal case concerning Mr. Brown, including multiple charges, which

should not have been included in Mr. Brown's consumer report.

37. In particular, the Report included information regarding the nature of the charges for case number 6D00343573 in the District Court for Montgomery County (Maryland) - Criminal System, including two charges for violation of a protective order and one charge for destruction of property.

38. However, these charges should not have been included in the Report because all records of case number 6D00343573 were expunged, obviously a status that RentSpree did not report.. The effect of the expungement was to remove the records as if they did not then exist. Thus, RentSpree's reporting of the expunged criminal charges was false.

39. Indeed, a simple search of the Maryland Judiciary Case Search, which is available online, confirms that case number 6D00343573 no longer exists. Additionally, a search of Mr. Brown's name on the Maryland Judiciary Case Search also establishes that no such charges are associated with his in Maryland's judicial records. Accordingly, any member of the public who took a five-minute cursory review of the public records available regarding Mr. Brown could confirm the material inaccuracies in the Report.

40. It is indisputable that prior to supplying the Report about Mr. Brown, RentSpree failed to consult current public records in Montgomery County, Maryland, which indicate that the aforementioned criminal charges are nonexistent. Had RentSpree actually consulted or obtained the underlying court records, it would have seen an obvious discrepancy in its outdated records and the current judicial records.

**C.  Facts Regarding the Plaintiffs' Individual Claims.**

41. On or around April 10, 2020, Plaintiffs' sent separate letters requesting copies of their files from RentSpree, including copies of all documents and information provided to their

potential landlord.

42. Plaintiffs sent the letters by certified mail and received confirmation that their requests were received by RentSpree.

43. Nonetheless, RentSpree ignored their requests and failed to provide any information to Plaintiffs in response.

**D.  Allegations Regarding RentSpree's Willfulness.**

44. RentSpree violated the FCRA by using overly broad matching criteria in the tenant screening reports it sold and by failing to check if a record was expunged prior to furnishing information about the record.

45. In this case (and likely representative of thousands of others), RentSpree matched this criminal information to Ms. Brown even though the underlying records unequivocally indicated that the offender was born on a different date than the date listed on Ms. Brown's application.

46. RentSpree's inaccurate reporting could have been easily prevented if it required a date of birth match prior to the publication of its reports—a common procedure adopted by consumer reporting agencies. See Nat'l Consumer Law Ctr., Broken Records, 15 (2012) (explaining that "mismatched reports" are "due in large part to unsophisticated matching criteria" and that "many private screening companies rely solely on first name, last name, and date of birth."); E-Backgroundchecks.com, 81 F. Supp. 3d at 1360 (discussing credit reporting agency's contention that use of first name, last name, and date of birth "is considered industry best-practice.").

47. Similarly, had RentSpree actually consulted or obtained the underlying court records, it would have seen an obvious discrepancy in its outdated records and the current judicial

9

records with respect to Mr. Brown's report.

48. Rather than adopting these procedures to ensure maximum accuracy, however, RentSpree designs its matching logic and procedures to produce reports at "light-speed"[3] instead of reviewing the information to determine its accuracy.

49. In addition to the conduct set forth above, RentSpree's willful conduct is further reflected by, inter alia, the following, by example only and without limitation:

    a. The FCRA was enacted in 1970; RentSpree has had many years to become compliant;

    b. RentSpree is a corporation with access to legal advice through its own general counsel's office and outside employment counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. RentSpree knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

    d. RentSpree voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

    e. RentSpree's violations of the FCRA were repeated and systematic.

50. At all times relevant hereto, RentSpree's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. RentSpree's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that RentSpree and other consumer reporting agencies have been subject to court decisions critical of similar conduct; and RentSpree will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports and hiding

---

[3] RentSpree, https://www.rentspree.com/ (last visited Sept. 23, 2020).

information from consumers.

## COUNT ONE– VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## Class Claim

51. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

52. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Ms. Brown brings this action for herself and on behalf of a class defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by RentSpree; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which included a criminal record; (d) which did not match the applicant's date of birth.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

Plaintiff is a member of this class.

53. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Brown brings this action for himself and on behalf of a separate class defined as follows:

> All natural persons residing in the United States (a) who were the subject of a report sold by RentSpree; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) which included a criminal record; (d) which was no longer publicly available on the date the report was furnished.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

Plaintiff is a member of this class.

54. **Numerosity. Fed. R. Civ. P 23(a)(1).** Based on other litigation involving RentSpree's competitors in the industry, Plaintiff estimates that the class is so numerous that

joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by RentSpree and the class members may be notified of the pendency of this action by published and/or mailed notice.

55. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1.) whether RentSpree's failure to require date of birth matches for criminal records was a procedure designed to ensure that its reports were as accurate as possible; (2.) whether RentSpree's procedure regarding the report of expunged records was designed to ensure that its reports were as accurate as possible; (3.) whether RentSpree's conduct constituted a violation of the FCRA; (4.) whether RentSpree's conduct was willful; and (5.) what is the appropriate level of damages.

56. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. Plaintiffs are entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiffs' claims are based on the same facts and legal theories as each of the class members' claims.

57. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are an adequate representative of the putative class because their interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiffs have retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the class members' interests. Neither Plaintiffs nor their counsel have any interest that might conflict with their

vigorous pursuit of this action.

58. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by RentSpree's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

59. As described above, RentSpree: (1) used loose matching criteria and algorithms that placed criminal records data on consumers' tenant screening reports, even though the dates of birth associated with the offenders did not match the applicant's date of birth; and (2) failed to maintain reasonable procedures designed to assure that it did not misreport expunged records.

60. This conduct violated § 1681e(b) of the FCRA.

61. Plaintiffs and each putative class member suffered real and actual harm and injury.

62. For example, the rights at issue were determined by Congress to be important measures to ensure continued accuracy and completeness in RentSpree's files and reports.

63. Class members were also falsely painted as criminals when the records either did not belong to them or were expunged.

64. RentSpree's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering RentSpree liable under 15 U.S.C. § 1681o.

65. As a result of these FCRA violations, RentSpree is liable for statutory damages from $100.00 to $1,000.00 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681g(a)
## (Individual Claim)

66. Plaintiffs reallege and incorporate all other factual allegations set forth in the Complaint.

67. Defendant violated the FCRA, 15 U.S.C. §1681g(a) by failing to clearly and accurately disclose all of the information in its files regarding Plaintiffs upon their request.

68. As a result of Defendant's conduct, Plaintiffs suffered actual damages including, without limitation, the denial of important information that was to have been part of their consumer disclosure otherwise to be provided upon request. The right to this information was determined by Congress to be important measures of Defendant's process to ensure continued accuracy and completeness in its files and reports.

69. Plaintiffs are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees in an amount to be determined pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory and punitive damages, as well as their attorney's fees and costs against the Defendant for the class claims, as well as actual, statutory, and punitive damages

and attorney's fees and costs for their individual claims; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**JENNIFER LEE BROWN AND CHRISTOPHER W. BROWN**

By: /s/ Leonard a. Bennett
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

*Counsel for Plaintiffs*